CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 02 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

EDWINA BASHAM VIAR,　　　　　　)
　　　　　　　　　　　　　　　　　) 　Civil Action No. 7:16CV00082
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　) 　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN, Acting　　　　)
Commissioner of Social Security, ) 　By:　Hon. Glen E. Conrad
　　　　　　　　　　　　　　　　　)　　　　Chief United States District Judge
　　　　Defendant.　　　　　　　　)

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Edwina Basham Viar, was born on August 17, 1962. While Mrs. Viar did not complete high school, she has earned a GED. Plaintiff has worked as a sales clerk, cashier supervisor, stock clerk, and sales representative. She also worked for a short period of time as a hotel maid. Mrs. Viar last worked in 2012. On November 16, 2012, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. Mrs. Viar alleged that she became disabled for all forms of substantial gainful employment on August 21, 2012 due to musculoskeletal problems, depression, anxiety, and hip problems. Plaintiff now maintains that she

has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Viar met the insured status requirements of the Act through the fourth quarter of 2014, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2014. See gen., 42 U.S.C. § 423(a).

Mrs. Viar's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 26, 2015, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mrs. Viar suffers from several severe impairments, including osteoarthritis; hepatitis C; chronic generalized pain disorder/fibromyalgia; major depression; and anxiety disorder. (TR 20). Because of these problems, the Law Judge ruled that plaintiff is disabled for all her past relevant work roles. (TR 30). However, the Law Judge held that Mrs. Viar retains sufficient functional capacity for a limited range of light exertional activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, with a sit/stand option every 30 minutes while remaining on task, occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, frequent handling and fingering, frequent exposure to pulmonary irritants, including fumes, odors, dust, and gas, occasional exposure to hazardous conditions, including unprotected heights and moving machinery and occasional exposure to vibration. She is also able to perform simple routine tasks with no interaction with the general public.

(TR 22). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law

Judge found that Mrs. Viar retains sufficient functional capacity to perform several specific light work roles existing in significant number in the national economy. (TR 31-32). The Law Judge identified potential jobs as a small parts assembler, laundry folder, and inspector/ hand packager. (TR 32). Accordingly, the Law Judge ultimately concluded that Mrs. Viar is not disabled, and that she is not entitled to benefits under either federal program. See gen., 20 C.F.R. §§ 404.1520(g) and 416.920(g). While plaintiff filed an administrative appeal, the Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having now exhausted all available administrative remedies, Mrs. Viar has appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As for plaintiff's physical problems, the court believes that the evidence supports the Law Judge's determination that Mrs. Viar retains sufficient functional capacity to perform light exertional activities. In this respect, while Mrs. Viar has a history of multiple musculoskeletal problems, several of her treating physicians have

3

Case 7:16-cv-00082-GEC   Document 15   Filed 09/02/16   Page 3 of 10   Pageid#: 1106

noted no significant reduction in range of motion, and no clinical findings of severe mechanical defect. For the most part, Mrs. Viar's doctors have prescribed conservative measures for pain control. In short, the court finds that the medical record fully supports the Law Judge's determination that plaintiff's physical problems do not prevent performance of lighter work activities, as long as plaintiff is given an option to sit or stand as necessary.

The difficulty in this case concerns the Law Judge's treatment of plaintiff's mental health issues. Mrs. Viar has a history of psychiatric hospitalizations, and she has been treated for depression and anxiety over a period of several years. More recently, her family physician referred her to Dr. Suzanna C. Jamison, a psychiatrist. Dr. Jamison saw Mrs. Viar on three occasions in 2013. Dr. Jamison reported symptoms of anxiety, depression, and panic attacks, though the psychiatrist attributed much of plaintiff's difficulty to situational issues. (TR 765, 781). On September 9, 2014, Dr. Jamison completed a mental residual functional capacity questionnaire. Stated succinctly, Dr. Jamison's findings indicate that Mrs. Viar is unable to engage in any reasonable work activity. (TR 816-20).

The Administrative Law Judge ultimately concluded that plaintiff's mental health problems are not so severe as to prevent performance of simple, routine tasks with no interaction with the general public. The Law Judge specifically determined to accord Dr. Jamison's findings and opinions "little weight," noting that Dr. Jamison had only seen Mrs. Viar on three occasions and that Dr. Jamison's clinical findings were not consistent with her work-related assessment. (TR 29). Instead, the Law Judge decided to accord "great weight" to the report of a consultative psychologist, Dr. David Leen. (TR 29). Dr. Leen conducted a clinical psychological evaluation in February 2013, several weeks before Mrs. Viar was first seen by Dr. Jamison. Thus, Dr. Leen did not have the

opportunity to consider Dr. Jamison's psychiatric findings and diagnoses. Remarkably, while the Law Judge criticized Dr. Jamison's report because the psychiatrist saw Mr. Viar on only three occasions, Dr. Leen saw plaintiff only on a single occasion. In any event, Dr. Leen ultimately diagnosed depressive disorder and anxiety disorder. (TR 721). Dr. Leen opined that plaintiff is capable of performing simple, repetitive work activities in a timely and appropriate manner. (TR 721).

The Administrative Law Judge also determined to give "partial weight" to reports from several nonexamining state agency physicians and psychologists. (TR 30). The record reveals that two state agency psychologists completed record reviews. Dr. Richard Luck submitted a mental residual functional capacity assessment on March 5, 2013. Dr. Luck relied heavily on Dr. Leen's clinical findings. Dr. Luck opined that while plaintiff experiences no limitations in her ability to carry out short and simple instructions, she is moderately limited in her capacity to discharge detailed instructions and to maintain attention and concentration for extended periods. (TR 68). Another state agency psychologist, Dr. David Niemeier, submitted a mental residual functional capacity assessment on November 1, 2013. (TR 48-50). In contrast to Dr. Luck's assessment, Dr. Niemeier noted a greater variety of work-related issues. While Dr. Niemeier felt that Mrs. Viar possessed the ability to carry out "very short and simple instructions," he noted moderate limitations in plaintiff's capacity to carry out detailed instructions, maintain attention/concentration, perform activities within a schedule, maintain regular attendance and punctuality, and engage in an ordinary routine without special supervision. (TR 49). Relying on the reports from the state agency psychologists, the Administrative Law Judge also found that Mrs. Viar experiences moderate difficulties as a result of her emotional problems. The Law Judge commented as follows:

5

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. She is able to handle a savings account and use a checkbook/money order, but has difficulty following instructions, handling stress and changes in a routine.

(TR 22).

While the court finds no real fault with the Law Judge's assessment of the mental health evidence, the court believes that the Law Judge erred in formulating a hypothetical question for the vocational expert's consideration without attempting to account for Mrs. Viar's moderate difficulties in maintaining concentration, persistence, or pace. Despite having found that plaintiff experiences severe impairments on the bases of major depression and anxiety disorder, and that these problems result in moderate difficulties in maintaining concentration, persistence, or pace, the Law Judge asked the vocational expert only to consider that Mrs. Viar is limited to simple, routine tasks involving little or no interaction with the general public. (TR 1030). Stated differently, while the Law Judge included some of the work-related limitations identified by the state agency psychologists in the hypothetical, he omitted other limitations which would seemingly affect the performance of almost any work role. Thus, in opining that Mrs. Viar could perform work as a small parts assembler, mail clerk, laundry folder, and hospital products assembler, the vocational expert was not asked to consider the significance of moderate limitations in concentration, persistence, or pace in the performance of such work roles as would seemingly require sustained attention and concentration. Furthermore, assuming, as did the Law Judge, the accuracy of Dr. Niemeier's functional capacity assessment, the vocational expert was not asked to consider the interplay of moderate limitations in plaintiff's capacity to sustain an ordinary routine, perform activities within a schedule, maintain regular attendance, and be punctual, despite the fact that the expert explicitly testified that absenteeism is a critical factor.

6

(TR 1032). Nevertheless, the Law Judge relied on the testimony of the vocational expert in determining that Mrs. Viar retains sufficient functional capacity for several specific light work roles existing in significant number in the national economy.

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

In his opinion, the Administrative Law Judge did not offer any rationale for omitting moderate limitations in concentration, persistence, and pace in his assessment of plaintiff's residual functional capacity, or in his hypothetical question propounded to the vocational expert. The court notes that in similar cases, the Commissioner often argues that such moderate limitations are subsumed under a finding that a claimant is capable of performing only simple and routine tasks. However, the court is simply unable to conclude that the hypothetical question, which assumed that plaintiff can perform unskilled work which requires nothing more than the execution of simple job instructions, was sufficient to alert the vocational expert to the existence of moderate limitations in plaintiff's concentration, work persistence, attendance to task, and punctuality. Indeed, the court believes that consideration of such limitations would be especially important in assessing capacity for production line work.

As noted by the United States Court of Appeals for the Tenth Circuit in <u>Wiederholt v. Barnhart</u>, 121 F. App'x 833, 839 (10th Cir. 2005):

7

> The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed. Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments. (citations omitted).

See also Millhouse v. Astrue, 2009 WL 763740, at *3 (M.D. Fla. March 23, 2009) (stating that "moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work"); Chavanu v. Astrue, 2012 WL 4336205, at *9 (M.D. Fla. September 21, 2012) ( noting that "[s]everal circuits have found that restricting [a] VE's inquiry to simple, routine, or repetitive tasks, or unskilled work does not accounts [sic] for a plaintiff's moderate deficiencies in concentration, persistence, or pace," and citing to these cases); and Sexton v. Colvin, 21 F.Supp.2d 639, 642-3 (W.D.Va. May 19, 2014) (a limitation to simple, unskilled work does not necessarily imply, or take into account, moderate limitations in concentration, persistence, or pace).

In Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) the United States Court of Appeals for the Fourth Circuit recently reached a similar conclusion:

> In addition, we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work.' Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

8

Id. at 638. The court believes that the rationale of Mascio applies directly to Mrs. Viar's appeal. Thus, the court finds "good cause" for remand of the case to the Commissioner for further consideration of this critical issue.

On appeal to this court, plaintiff argues that the final decision of the Commissioner should be reversed. Mrs. Viar asserts that the functional assessment by Dr. Jamison clearly establishes her disability for all forms of work activity. She contends that as a treating physician, Dr. Jamison's input should be given greater weight than the reports from the consultative psychologists or the nonexamining "state agency psychologists." See, e.g., Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The court shares plaintiff's frustration in the fact that the Law Judge rejected Dr. Jamison's opinion because the psychiatrist saw plaintiff on only three occasions, while crediting the consultative psychologist's opinion, despite the fact that Dr. Leen saw Mrs. Viar only once. Nevertheless, the court believes that there is substantial evidence to support the Law Judge's resolution of the conflicts in the mental health evidence. Simply stated, Dr. Jamison's assessment of plaintiff's work-related capacity is not consistent with her own clinical notes following examinations in 2013. Moreover, Dr. Jamison saw Mrs. Viar infrequently, and she prescribed conservative treatment measures. Most importantly, the court must agree that Dr. Jamison's assessment is inconsistent with all the other findings and conclusions from the mental health treatment providers. The court concludes that the Law Judge reasonably determined not to give controlling weight to Dr. Jamison's work-related assessment. In any event, given the fact that the court has determined to remand this case for further consideration, Mrs. Viar may submit on remand any

additional reports and explanations from Dr. Jamison, as may support her application for benefits, if such evidence exists.

In summary, the court concludes that the critical hypothetical question posed by the Administrative Law Judge, excluding plaintiff's moderate limitations in concentration, persistence, and pace, was not consistent with the evidence of record, or the Law Judge's explicit findings. Accordingly, the court will remand the case to the Commissioner for further development and consideration. If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing, at which a comprehensive hypothetical question can be put to a qualified vocational expert. Upon remand, both sides will be allowed to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

DATED: This _2d_ day of September, 2016.

                                                          Chief United States District Judge